**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| BITHARMONY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. AND AMAZON.COM SERVICES LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25cv02449 (AJT/WEF) |

**PLAINTIFF BITHARMONY, LLC'S OPPOSITION TO AMAZON'S MOTION TO COMPEL REGARDING LITIGATION FUNDING DOCUMENTS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND .......................................................................................................... 1

III. ARGUMENT ............................................................................................................. 3

A. BitHarmony Has Produced All Non-Privileged Documents and Provided Substantive Interrogatory Responses Regarding the Patent Purchase............................................. 3

1. BitHarmony Has Fully Responded to Interrogatory No. 7 and Related Document Requests........................................................................................................ 3

2. The Eastern District of Virginia Has Consistently Rejected Litigation Funding Discovery Absent Concrete, Non-Speculative Justification. ................................ 5

3. Litigation Funding Documents Are Not Relevant to Any Claim or Defense. ...... 6

4. The Requested Discovery Is Not Proportional to the Needs of the Case. .......... 10

5. Litigation Funding Materials Are Separately Protected as Work Product. ......... 11

IV. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashghari-Kamrani v. United Servs. Auto. Ass'n*,
2016 WL 11642670 (E.D. Va. May 31, 2016) ........ *passim*

*AVM Techs., LLC v. Intel Corp.*,
2017 WL 1787562 (D. Del. May 1, 2017) ........ 8

*Benitez v. Lopez*,
2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) ........ 9

*Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*,
2015 WL 778846 (Del. Ch. Feb. 24, 2015) ........ 14

*Cont'l Circuits LLC v. Intel Corp.*,
435 F. Supp. 3d 1014 (D. Ariz. 2020). ........ 13, 15

*Design with Friends, Inc. v. Target Corp.*,
2024 WL 4333114 (D. Del. Sept. 27, 2024) ........ 13, 15

*Devon IT, Inc. v. IBM Corp.*,
2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ........ 14

*Diversified Indus., Inc. v. Meredith*,
572 F.2d 596 (8th Cir. 1977) ........ 11

*Doe v. Society of Missionaries of Sacred Heart*,
2014 WL 1715376 (N.D. Ill. May 1, 2014) ........ 15

*Dupont v. Costco Wholesale Corp.*,
2019 WL 8158471 (E.D. La. Oct. 15, 2019) ........ 10

*Fresenius Medical Care Holding Inc. v. Baxter International, Inc.*,
224 F.R.D. 644 (N.D. Cal. 2004) ........ 4

*Fulton v. Foley*,
2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ........ 7, 8, 9

*Hertzberg v. Veneman*,
273 F. Supp. 2d 67 (D.D.C. 2003) ........ 12

*In re Grand Jury Subpoena*,
870 F.3d 312 (4th Cir. 2017) ........ 14

*In re Int'l Oil Trading Co., LLC*,
548 B.R. 825 (Bankr. S.D. Fla. 2016) ..... 14

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
405 F. Supp. 3d 612 (D.N.J. 2019) ..... 1, 6,7,10

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ..... 7

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
2018 WL 466045 (W.D. Pa. Jan. 18, 2018) ..... 12

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ..... 8

*Mackenzie Architects, P.C. v. VLG Real Estates Devs., LLC*,
2017 WL 4898743 (N.D.N.Y. Mar. 3, 2017) ..... 10

*Memory Integrity, LLC v. Intel Corp.*,
308 F.R.D. 656 (D. Or. 2015) ..... 3

*Miller UK Ltd. v. Caterpillar, Inc.*,
17 F. Supp. 3d 711 (N.D. Ill. Jan. 6, 2014) ..... 8, 14

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
2019 WL 118595 (N.D. Cal. Jan. 7, 2019) ..... 7

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
2011 WL 1714304 (E.D. Tex. May 4, 2011) ..... 12, 15

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*,
967 F.2d 980 (4th Cir. 1992) ..... 11

*Pecos River Talc LLC v. Emory*,
2026 WL 674190 (E.D. Va. Mar. 10, 2026) ..... *passim*

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ..... 8
*Space Data Corp. v. Google LLC*,
2018 WL 3054797 (N.D. Cal. June 11, 2018) ..... 10

*United Access Techs., LLC v. AT&T Corp.*,
2020 WL 3128269 (D. Del. June 12, 2020) ..... 7

*United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*,
2016 WL 1031157 (E.D. Tex. Mar. 15, 2016) ..... 14

*VHT, Inc. v. Zillow Grp*., Inc,
2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) .................................................. 9

*Viamedia, Inc. v. Comcast Corp*.,
2017 WL 2834535 (N.D. Ill. June 30, 2017) .................................................. 14

*Yousefi v. Delta Elec. Motors, Inc*.,
2015 WL 11217257 (W.D. Wash. May 11, 2015) .................................................. 7

**Federal Rules**

FRCP 26(b) .................................................. *passim*
FRCP 7.1(a)(1) .................................................. 9

## I. INTRODUCTION

This motion arises from Defendants Amazon.com Inc.'s and Amazon.com Services LLC's (collectively "Amazon") attempt to compel the production of irrelevant and privileged materials related to BitHarmony, LLC's ("BitHarmony") third-party litigation funding arrangement. Contrary to Amazon's depiction of the information sought as "relating to the purchase of the asserted patents," any fair review of the requests for production identified by Amazon reveals that Amazon's motion is actually a cloaked attempt to force production of financing information relating to the running of the proceedings by counsel. As explained below, courts "agree[] with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant." *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019).

BitHarmony has fully complied with its discovery obligations, having produced all relevant, responsive, and non-privileged documents, and having confirmed this completion with Amazon. Yet, Amazon continues to press for materials that fall entirely outside the permissible scope of discovery. Through the present motion, Amazon attempts to compel information regarding third-party investment information, the distribution of potential settlement or verdict proceeds, and the financial arrangements for payment of attorneys' fees and costs. Complying with these demands would improperly expose strictly protected pre-litigation analyses, irrelevant but confidential funding agreements, and privileged communications between counsel and interested parties. These materials are entirely disconnected from the substantive claims and defenses in this action. Amazon's motion is legally baseless, seeks heavily protected irrelevant work product, and must be denied.

## II. BACKGROUND

This is a patent infringement case. BitHarmony is the owner of the Asserted Patents.

BitHarmony filed this action in December 2025, asserting that Amazon infringes the Asserted Patents.

In October 2025, BitHarmony acquired the Asserted Patents from Pixelworks, Inc. ("Pixelworks") as part of a broader patent portfolio transaction. BitHarmony has produced the core transactional documents reflecting that purchase: the Patent Purchase Agreement, the related Assignment, and the License Agreement pursuant to which Pixelworks received a non-exclusive license back, and has provided all relevant non-privileged information in its possession and control. BitHarmony has also supplemented its interrogatory response to identify the individuals who participated in discussions regarding the transaction.

BitHarmony elected to pursue a reasonable royalty damages theory using the hypothetical negotiation framework, which is typical in patent cases. *See* Ex. C at 74. Amazon contends that the details of the BitHarmony-Pixelworks transaction are relevant to that hypothetical negotiation analysis. Amazon also seeks documents and information identifying all persons with any ownership, financial, or other interest in the outcome of this case—a request plainly directed at identifying BitHarmony's investors and information concerning any litigation funding arrangements, not to mention details concerning persons involved in the payment of attorneys' fees and costs to pursue this action. (*See* Amazon RFPs 9, 37, 69 and 79.)

BitHarmony has declined to produce: (1) privileged communications between counsel and client, and between BitHarmony and Pixelworks that were made under direction of counsel in anticipation of litigation and pursuant to a nondisclosure agreement and in furtherance of a common legal interest in the enforceability and value of the patent portfolio; and (2) information about investors and financial interests in the outcome of the litigation, which is not relevant to any claim or defense in this patent infringement case.

Amazon now moves to compel production of these categories. Amazon's Motion should be denied.

## III. ARGUMENT

### A. BitHarmony Has Produced All Non-Privileged Documents and Provided Substantive Interrogatory Responses Regarding the Patent Purchase.

#### *1. BitHarmony Has Fully Responded to Interrogatory No. 7 and Related Document Requests.*

Amazon argues that BitHarmony's responses to Interrogatory No. 7 and related document requests are inadequate because they do not describe in granular detail every aspect of the negotiations leading to the October 2025 patent purchase. (Op. Br. at 1-2.) Amazon is wrong. BitHarmony has produced the complete documentation of the transaction itself—the Patent Purchase Agreement, the Assignment, and the License Agreement—and has identified the key individuals involved. That is precisely the information that BitHarmony possesses in non-privileged form.

Courts authorizing discovery into patent transactions have focused on *the terms and basic circumstances* of the transaction, not on every internal deliberation or communication that is protected by applicable privileges. The cases Amazon cites do not require disclosure of privileged communications; they require disclosure of the *facts* of the transaction and the substantive terms negotiated. *See Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 663 (D. Or. 2015) (permitting discovery of "substantive details regarding the negotiations, such as any 'assertions … regarding the scope or value of the patents, or any other proposed payment terms'"—not privileged communications). BitHarmony has identified the parties to the transaction, the final terms of the transaction (including the purchase price paid by BitHarmony), and the individuals who participated in negotiations. That satisfies BitHarmony's discovery obligations with respect to non-privileged information.

Amazon's complaint that BitHarmony's supplemental response does not describe "what was discussed" (Mot. at 5) and does not identify offers and valuations is a demand for information that either does not exist in non-privileged form or is protected by applicable privileges. Amazon cannot use Rule 37 to override the legitimate privilege protections that shield those communications.

Amazon's reliance on *Fresenius Medical Care Holding Inc. v. Baxter International, Inc.*, 224 F.R.D. 644 (N.D. Cal. 2004), is also misplaced. That case addressed the discoverability of business records evaluating the acquisition target's assets, *not* attorney-client communications or work product. BitHarmony is not withholding and business records in its possession or control; it withholds privileged communications. If such non-privileged business records existed and were responsive, BitHarmony would be required to produce them, and to the extent any do exist, BitHarmony has done so.

With respect to Requests for Production 9, 31, 37, 70, and 75, BitHarmony has already produced all responsive, non-privileged documents in its possession, custody, and control. Amazon's motion to compel fails to identify a single responsive, non-privileged document that BitHarmony is ostensibly withholding—because no such documents exist.

Instead, Amazon has manufactured a discovery dispute to obscure the true objective of its requests: an improper, sweeping fishing expedition into BitHarmony's litigation funding and valuation materials. Contrary to Amazon's framing, BitHarmony has fully answered Interrogatory No. 7. Yet Amazon demands more, asking the Court to compel all communications with "investors" (RFP 9) and all documents sent to them (RFP 37); all communications concerning patent "valuation" (RFP 31); all documents relating to "any agreement with any third-party" (RFP 70); and any documents relating to Pixelworks, Inc. (RFP 75). What Amazon conspicuously omits

from its briefing is any concrete, non-speculative basis to justify this massive overreach. A party cannot compel the wholesale disclosure of litigation funding or valuation materials without establishing their objective relevance to the merits of the pending claims. Amazon has completely failed to meet this standard, instead deploying these overly broad requests as a backdoor attempt to pierce the work-product doctrine without the requisite showing of relevance or need.

Accordingly, the Court should deny Amazon's motion to compel further responses to Interrogatory No. 7 and the related document requests.

### ***2. The Eastern District of Virginia Has Consistently Rejected Litigation Funding Discovery Absent Concrete, Non-Speculative Justification.***

There is no basis for Amazon's efforts to compel production of litigation funding materials. The Eastern District of Virginia has spoken clearly on the standard governing litigation funding discovery. In both decisions addressing this issue, the Court squarely resolved the dispute on relevance and proportionality grounds under Fed. R. Civ. P. 26(b)(1), without finding it necessary to separately address work product protection under Rule 26(b)(3). *See Pecos River Talc LLC v. Emory*, 2026 WL 674190, at *4 n.2 (E.D. Va. Mar. 10, 2026); *Ashghari-Kamrani v. United Servs. Auto. Ass'n*, 2016 WL 11642670, at *4 (E.D. Va. May 31, 2016).

Taken together, *Pecos River Talc* and *Ashghari-Kamrani* establish a clear standard: a party seeking disclosure of litigation funding information must present concrete, non-speculative reasons why the funding arrangement is relevant to the claims or defenses at issue—arguments that go beyond the mere fact that a third party has funded the litigation, and beyond theoretical possibilities about that funder's knowledge or interests. In both cases, the moving party failed to present such a non-speculative, objective basis, and the Court treated the funding issue as a "side issue" that has little to no bearing on the merits of the pending claims. Notably, the Eastern District of Virginia has not adopted a local rule or standing order specifically mandating disclosure of

litigation funding arrangements. Rather, the Court has resolved these disputes on the narrower grounds of relevance and proportionality, grounds that independently require denial of Amazon's motion.

Amazon cannot satisfy this standard. Amazon's papers reveal nothing more than theoretical speculation about why litigation funding information might somehow be relevant. That is precisely the kind of speculative argument that this Court has consistently rejected.

#### ***3. Litigation Funding Documents Are Not Relevant to Any Claim or Defense.***

Federal Rule of Civil Procedure 26(b)(1) limits discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The burden of establishing relevance rests with the party seeking discovery.

This Court should agree "with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant." *In re NDMA Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d at 615; *see also Pecos River*, 2026 WL 674190, at *4 n.2 (explaining that discovery about "litigation or damages funding is tangential, at best, and of little to no relevance to the merits of the pending claim" because "litigation funding [is] a 'side issue' that has nothing to do with addressing the key issues in the case"); *Ashghari-Kamrani*, 2016 WL 11642670, at *4 ("Litigation funding is merely a relevancy issue: Information about a party's litigation funding is only relevant (and ultimately discoverable) if the requesting party has an actual basis for the relevancy of the information other than mere speculation or fishing" and "[h]aving identified themselves as the only party with an ownership interest in the [Asserted] patent, the Defendant has not proffered sufficient justification to warrant further discovery production regarding other theoretical financially interested parties.").

How a plaintiff finances its litigation, no less than how a defendant does so, is simply

irrelevant to the case. As one court has explained, "[w]hether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from [a third party] is not relevant to any claim or defense at issue." *Yousefi v. Delta Elec. Motors, Inc.*, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015); *see also*, *e.g.*, *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269, at *1 (D. Del. June 12, 2020) (holding that "AT&T has failed to meet the threshold requirement to show that the litigation funding-related discovery it seeks here is relevant"); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) ("The Court concludes that [defendant] is not entitled to the discovery it seeks [regarding litigation financing] because it is not relevant."); *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) ("The defendants have failed to make [a] showing [of relevance]… [and] have provided no nonspeculative basis for raising such concerns" about relevance of litigation funding documents.).

Just as Amazon need not disclose the terms under which it has raised capital to pay its lawyers, there is simply no reason Amazon must know how BitHarmony is financing this case. Indeed, courts across the country are in overwhelming agreement with the legal precedent from this Court: litigation funding information is not relevant to the merits of patent infringement claims or defenses. As one court explained, "[l]itigation funding documents have no bearing on evidence that is needed to prove a claim or defense at a trial or establish the amount of damages that a jury should award." *Fulton v. Foley*, 2019 WL 6609298, at *2-3 (N.D. Ill. Dec. 5, 2019). This Court should agree "with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant." *In re NDMA Contamination Prods. Liab. Litig.*, 405 F. Supp. at 615.

Amazon advances several theories of relevance, all of which have been previously rejected

by courts considering identical arguments.

**Reasonable Royalty Damages.** Amazon's most prominent argument is that information about investors' interests in the outcome is relevant to BitHarmony's reasonable royalty damages theory. (Mot. at 2-5.) This argument has been squarely rejected. *See AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (D. Del. May 1, 2017) (Litigation funding agreements "are so far removed from the hypothetical negotiation that they have no relevance."); *Fulton*, 2019 WL 6609298, at *2 (evidence of funding is irrelevant to the damages or offset inquiry). Who finances BitHarmony's litigation and how proceeds are distributed internally have no bearing on what a willing licensor and willing licensee would have agreed to pay for a license to the Asserted Patents at the time of first infringement. *Ashghari-Kamrani*, 2016 WL 11642670, at *4 (citing *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 742 (N.D. Ill. Jan. 6, 2014) for the proposition that a Defendant "not entitled to discover the amount of money sought or received by [plaintiff], the details of the agreement it has with its funder, or how much the funder will receive if [plaintiff] wins the case" as that "information is simply irrelevant").

The hypothetical negotiation focuses on the *objective economic value of the patents*, not the financial structure of the patent owner's business or the subjective circumstances surrounding the negotiations. Because the hypothetical negotiation framework is governed by objective criteria rather than the subjective idiosyncrasies of the parties, *see LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012), the resulting reasonable royalty must remain strictly tethered to the objective economic value of the patented technology itself, *see ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

As such, the subjective information that Amazon purports to be relevant, such as "which party initiated the transaction" and "how Pixelworks and BitHarmony negotiated the agreement"

is wholly irrelevant to the objective hypothetical negotiation process. (Mot. at 3.)

**Valuation of Patents.** Amazon suggests that information about the circumstances surrounding the purchase of the patents and persons with interests in the litigation outcome is relevant to "the valuation of the patents." (Mot. at 4, 12). But the relevant valuation evidence is the patent purchase price—which BitHarmony has produced—along with prior transactions in the patent's chain of title. A litigation funder's or any other third party's assessment of the investment value of this lawsuit is not the same as the *objective* market value of the Asserted Patents, and courts have repeatedly declined to equate the two. *See Fulton*, 2019 WL 6609298, at *2 (evidence of funding is irrelevant to the damages inquiry).

**Standing.** Amazon hints that information about financial interests might bear on BitHarmony's standing. (Mot. at 12.) This speculative argument has been squarely rejected. *VHT, Inc. v. Zillow Grp.*, Inc, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016) ("Although Zillow poses several imaginable hypotheticals in which VHT's litigation funding scenario becomes relevant," including related to standing, "the dearth of evidence on the record supporting Zillow's position renders that information negligibly relevant, minimally important in resolving the issues, and unduly burdensome."). BitHarmony has fully complied with Federal Rule of Civil Procedure 7.1(a)(1). Amazon identifies no concrete reason why the internal distribution of proceeds bears on whether BitHarmony has standing to sue.

**Bias.** To the extent Amazon suggests that funding information might reveal bias or credibility issues, "[t]hat a person has received litigation funding does not assist the factfinder in determining whether or not the witness is telling the truth." *Benitez v. Lopez*, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019). Amazon offers nothing more than speculation on this point.

Amazon has not, and cannot, satisfy this Court's standard, articulated in both *Pecos River Talc*

and *Ashghari-Kamrani*, requiring concrete, non-speculative reasons why a funding arrangement is relevant to the claims or defenses at issue.

#### *4. The Requested Discovery Is Not Proportional to the Needs of the Case.*

Amazon's request fails for a separate, independent reason: it is wholly disproportionate to the needs of the case under Rule 26(b)(1). Even if Amazon could establish some marginal relevance—which it cannot—courts routinely deny litigation funding discovery as a collateral distraction. *See, e.g.*, *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) ("Even if litigation funding were relevant (which is contestable), *potential* litigation funding is a side issue at best.").

This is especially true here. The parties are actively litigating highly technical issues surrounding source code, infringement, patent validity, and complex financial damages. To compel BitHarmony to divert resources away from these core merits issues to produce irrelevant information concerning a third party's privileged, subjective impressions is a wasteful detour that squarely violates the proportionality mandate of Rule 26. *See, e.g., In re NDMA Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d at 616 ("Even if plaintiffs' litigation funding is marginally relevant, which is not the case, defendants' requested discovery would be denied because it is not 'proportional to the needs of the case.'"); *Dupont v. Costco Wholesale Corp.*, 2019 WL 8158471, at *4-6 (E.D. La. Oct. 15, 2019) (denying "the production of the medical funding agreement, because the agreement is not relevant nor proportional to the needs of the case"); *Mackenzie Architects, P.C. v. VLG Real Estates Devs., LLC*, 2017 WL 4898743, at *2 (N.D.N.Y. Mar. 3, 2017) ("[T]he Court concludes that these demands are not proportionally relevant to the needs of the case at this time and will not require their production.").

As this Court has correctly recognized, litigation funding is a "side issue" with little to no

bearing on the merits. *Pecos River Talc*, 2026 WL 674190, at *4 n.2. Amazon fails to demonstrate how the funding information it seeks is relevant to any claim or defense in this case. Furthermore, the burden and expense of compelling this discovery—including inevitable collateral disputes over logging and production—far outweigh any speculative benefit. Accordingly, Amazon's motion to compel must independently be denied on proportionality grounds.

### *5. Litigation Funding Materials Are Separately Protected as Work Product.*

In addition to the foregoing, to the extent any documents exist that are responsive to Interrogatories Nos. 7 and 14 and the Requests for Production identified by Amazon, such materials are separately protected by the work product doctrine.

That doctrine, codified in the Federal Rules of Civil Procedure, provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The Fourth Circuit has clarified the work product doctrine in *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992), noting that "the document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation."

The work product doctrine does not just protect materials produced by a party or its lawyer. Rather, Rule 26 expansively protects the work product of any party's "representative," which is broadly defined as "including the other party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). As such, representatives include counsel, but also third-party consultants and agents such as litigation funders. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) ("While the 'work product' may be, and often is, that of an attorney, the

concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer."); *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 76 (D.D.C. 2003) ("By its own terms, then, the work product privilege covers materials prepared by or for *any party or by or for its representative*; they need not be prepared by an attorney or even for an attorney.").

**a. Litigation Funding Materials Are Protected Work Product.**

Amazon's demands target quintessential work product. The requested materials include counsel's communications with funders regarding the merits of the case, strategic financial budgets, and the underlying funding agreement. Because litigation funding materials are by definition created "in anticipation of litigation," they easily satisfy the requirements of Rule 26(b)(3)(A). More importantly, because Amazon seeks communications evaluating the merits of the litigation, it is improperly attempting to probe the mental impressions and legal theories of BitHarmony's counsel, which are entitled to near-absolute protection. *See, e.g., Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5 (W.D. Pa. Jan. 18, 2018) (holding that communications with litigation funders "fall within work-product immunity because they were communications with Plaintiff's agents and in anticipation of litigation"); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) ("All of the documents were prepared, however, with the intention of coordinating potential investors to aid in future possible litigation. The Court holds that these documents are protected by the work product protection.").

This is true not only of communications and analyses prepared by BitHarmony, its lawyers, and its funder. It is also true of the litigation funding agreement itself. *See, e.g.*, *Lambeth*, 2018 WL 466045, at *6 (holding that a litigation funding agreement "was undisputedly prepared in anticipation of the instant litigation and for the purpose of pursuing the litigation" and thus is

"shielded under work product protection"). While there may be a business purpose to the funding agreement, "any business-sustaining purpose of the litigation funding agreements in this case is 'profoundly interconnected' with the purpose of funding the litigation. This litigation is the essential activity of Plaintiff's business, and the funding agreements reviewed by the Court concern the funding of this lawsuit." *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020).

These materials were prepared by BitHarmony, its counsel, and its representatives—specifically, litigation funders. Federal Rule of Civil Procedure 26(b)(3)(A) deliberately defines work product broadly, protecting materials prepared by or for a party, as well as its "attorney, consultant, surety, indemnitor, insurer, or agent." Litigation funders acting in this capacity fall squarely within this broad protection. As Judge Bibas explained in *Design with Friends, Inc. v. Target Corp.*, a litigation funder is a party's "representative" after it signs a funding agreement because the funder "not only funded [the plaintiff's] lawsuit but also consulted on the suit's strategy and progress." 2024 WL 4333114, at *2 (D. Del. Sept. 27, 2024). And a litigation funder is the party's representative before a funding agreement is signed as well, because the funder and plaintiff are "mutually bound by nondisclosure agreements, and [the funder] [is] evaluating [the plaintiff's] claim at [the plaintiff's] request. That is the kind of sensitive litigation assistance that makes someone a representative." *Id.* Documents and communications prepared in anticipation of litigation remain fully protected work product even when shared with a litigation funder under a confidentiality agreement.

Unsurprisingly, there are myriad decisions holding that litigation funding documents and communications may not be discovered because they are protected from disclosure by the work product doctrine. In addition to all the cases just discussed, *see, e.g., Viamedia, Inc. v. Comcast*

*Corp*., 2017 WL 2834535, at *3 (N.D. Ill. June 30, 2017); *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 831-32 (Bankr. S.D. Fla. 2016); *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2016 WL 1031157, at *6 (E.D. Tex. Mar. 15, 2016); *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A*., 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015); *Miller UK Ltd. v. Caterpillar, Inc*., 17 F. Supp. 3d 711, 734-39 (N.D. Ill. 2014); *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012).

#### b. Litigation Funding Documents Are Protected Opinion Work Product.

Amazon's demand overreaches into the most closely guarded category of protected material: opinion work product. Because these funding documents inherently reflect the "mental impressions, conclusions, opinions, or legal theories" of BitHarmony's counsel regarding this litigation, Fed. R. Civ. P. 26(b)(3)(B), they enjoy "nearly absolute immunity" from disclosure under Fourth Circuit precedent. *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017).

Litigation funding communications inherently contain the "mental impressions, conclusions, opinions, or legal theories" of BitHarmony, its counsel, and its funders. Memoranda evaluating the case indisputably reflect these protected assessments. Furthermore, the term sheet and funding agreement themselves are inextricably linked to counsel's mental impressions. Negotiating a case budget, determining return structures, and staging funding around specific litigation risk points invariably captures and reveals the parties' core strategic views regarding the merits of the case.

Consequently, courts consistently recognize that litigation funding documents inherently reflect counsel's mental impressions, legal theories, and strategic evaluations. Because these materials go to the very heart of an attorney's case strategy, they are rightfully classified as deeply protected opinion work product and shielded from discovery. *See, e.g.*, *Design with Friends, Inc.*,

2024 WL 4333114, at *3 (holding that because litigation funding documents include "evaluation[s] of the strengths and weaknesses of [a funded party's] case," they constitute opinion work product); *Miller UK*, 17 F. Supp. 3d at 735 (protecting communications to prospective funders because they contain "mental impressions, theories and strategies" prepared specifically for litigation); *Doe v. Society of Missionaries of Sacred Heart*, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) (finding materials shared with funders "constitute opinion work product" because they incorporate counsel's opinions on the strength of claims and merits of defenses).

Amazon cannot overcome this near-absolute privilege. To pierce even ordinary work product protection, Amazon bears the heavy burden of demonstrating a compelling "substantial need" for the documents. Amazon has entirely failed to make this baseline showing. More critically, Amazon has not even attempted to establish the extraordinary—if not insurmountable—circumstances required to defeat the heightened protection afforded to opinion work product.

Finally, work product protection is not waived by disclosure to a litigation funder where, as here, the disclosure was made pursuant to confidentiality agreements and did not substantially increase the opportunity for adversaries to obtain the information. *See Cont'l Circuits*, 435 F. Supp. 3d at 1022 ("work product protection for litigation funding documents is not waived when such documents contain confidentiality provisions and are disclosed to litigation funders with common interests"); *Mondis Tech.*, 2011 WL 1714304, at *3.

The Court should separately and independently deny Amazon's motion to compel on work product grounds.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Amazon's Motion to Compel in its entirety, as the motion fails on five distinct fronts. First, the motion is unnecessary because BitHarmony has already produced all non-privileged documents and substantive interrogatory

responses regarding the Pixelworks transaction. Second, it is improper under Rule 26 because Amazon cannot establish a relevant basis for the remaining materials, and the burden of production vastly outweighs any theoretical benefit. Third, Amazon's demand for investor and financial information contradicts established precedent; it is a thinly veiled attempt to obtain litigation funding discovery, a tactic this Court has consistently rejected under *Pecos River* and *Ashghari-Kamrani* absent the concrete showing of relevance that Amazon has failed to make. Fourth, even if marginal relevance existed, the requests are not proportional to the needs of the case. Finally, to the extent relevance could be established for any remaining document or information, those materials remain firmly shielded by the work-product doctrine.

Dated: May 27, 2026

Respectfully submitted,

*/s/ Blair M. Jacobs*

Blair M. Jacobs (VA Bar No. 32010)
bjacobs@bsfllp.com
Christina A. Ondrick (VA Bar No. 45736)
condrick@bsfllp.com
John S. Holley (Admitted *Pro Hac Vice*)
jholley@bsfllp.com
John Wittenzellner (Admitted *Pro Hac Vice*)
jwittenzellner@bsfllp.com
Boies Schiller Flexner LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Charles B. Molster, III (VA Bar No. 23613)
cmolster@molsterlaw.com
Law Offices of Charles B. Molster, III PLLC
1901 Pennsylvania Avenue, NW, Suite 610
Washington, DC 20006
Telephone: (703) 346-1505

*Attorneys for Plaintiff BitHarmony, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.

*/s/ Blair M. Jacobs*